JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Aimee Candelet

## DEFENDANTS

Mike Roth d/b/a Auto Pros, et al.

**(b)** County of Residence of First Listed Plaintiff   Kent County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia County
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Matthew B. Weisberg, Weisberg Law
7 South Morton Avenue, Morton, PA 19070
mweisberg@weisberglawoffices.com          (610) 690-0801

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | **LABOR** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | Act | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☒ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | Leave Act | | Act |
| | Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. §1602, et seq.

Brief description of cause:
Truth-In-Lending: Vehicle

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $
will supply

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____          DOCKET NUMBER _____

DATE   3/10/14

SIGNATURE OF ATTORNEY OF RECORD
*[signature]*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Aimee Candilet                                    CIVIL ACTION

v.

Mike Roth d/b/a Auto Pros, et al.                 NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                          (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                  (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                     (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (X)

3/10/14                     Matthew B Weisberg            Plaintiff (s)
**Date**                    **Attorney-at-law**          **Attorney for**

(610) 690-0801             (610) 690-0880                mweisberg@weisberglawoffices.com
**Telephone**              **FAX Number**                **E-Mail Address**

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: _3704 Willow Grove Road, Camden, DE 19934_

Address of Defendant: _6250 Harbison Avenue, Philadelphia, PA 19149_

Place of Accident, Incident or Transaction: _Philadelphia, PA_
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   _unknown_   Yes ☐  No ☐

Does this case involve multidistrict litigation possibilities?   Yes ☐  No ☒

*RELATED CASE, IF ANY:*

Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☐  No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☐  No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes ☐  No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐  No ☒

**CIVIL: (Place ✔ in ONE CATEGORY ONLY)**

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☒ All other Federal Question Cases
    (Please specify)   _TILA_

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, _Matthew Weisberg_, counsel of record do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☑ Relief other than monetary damages is sought.

DATE: _3/10/14_   _[signature]_   _85570_

Attorney-at-Law   Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _3/10/14_   _[signature]_   _85570_

Attorney-at-Law   Attorney I.D.#

CIV. 609 (6/08)

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Aimee Candelet | : | |
| 3704 Willow Grove Road | : | |
| Camden, DE 19934 | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: |
| | : | |
| v. | : | |
| | : | |
| Mike Roth | : | **JURY TRIAL DEMANDED** |
| d/b/a Auto Pros | : | |
| 6250 Harbison Avenue | : | |
| Philadelphia, PA 19149 | : | |
| | : | |
| And | : | |
| | : | |
| Santander Consumer USA, Inc. | : | |
| 8585 Stemmons Freeway | : | |
| Suite 1100-N | : | |
| Dallas, TX 75247 | : | |
| | : | |
| And | : | |
| | : | |
| John Does 1-10 | : | |
| | : | |
| Defendants. | : | |

## CIVIL ACTION COMPLAINT

### I.   Jurisdiction and Venue

1.      Jurisdiction in this Honorable Court is based on a violation of federal law conferred by 28

U.S.C. §1331 and diversity conferred by §1332; supplemental jurisdiction over state law claims

is granted by 28 USC §1367.

2.      Venue lies in this district in that the events giving rise to this claim occurred here, at least

one (1) Defendant resides, maintains a principal place of business, and/or does business here,

and/or the property which is the subject of this action is situated within this district.

## II.   Parties

3.      Plaintiff, Aimee Candelet, is an adult individual, currently residing at the above captioned address. Plaintiff is a citizen of Delaware.

4.      Defendant, Mike Roth, is an individual doing business at the above captioned addresses who, at all times material herein, acted individually, as an employee of, as owners of, and/or doing business as Defendant, John Doe, Auto Pros. Defendants are believed citizens of Pennsylvania.

5.      Defendant, Santander Consumer USA, Inc., is a Texas corporation maintaining a principle place of business at the above captioned address. Defendant is believed a citizen of Texas.

6.      Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below. Upon information and belief, Defendants, John Does, were agents, servants, workmen, or employees of Co-Defendant, liable to Plaintiff hereunder.

## III.   Operative Facts

7.      On or about May 4, 2012, Plaintiff purchased a 2009 Dodge Journey SX from Defendant, Mike Roth, doing business as Defendant, John Doe, Auto Pros.  (Exh. A).

8.      When Plaintiff originally negotiated for the vehicle, Roth said the price would be approximately $12,000.  Roth also represented to Plaintiff that the vehicle had a 2-year warranty. Based on these representations, Plaintiff quickly signed the contract and went on vacation.

9.      Soon after, Plaintiff noticed that the price was approximately $3,000 higher.  When Plaintiff asked Roth why the price increased by several thousand dollars, Roth explained that there was a bank fee because Plaintiff had bad credit.  In fact, Roth did not disclose that AutoPros financed the vehicle and that Autopros made the adverse credit action by denying the credit application and then accepting thereafter by raising the price $3,000.

10.     Plaintiff then called Defendant, Santander, the loan's assignee, to inquire about the fee. Santander denied same.

11.     On the same day of purchase, Plaintiff noticed several problems with the vehicle.  The bumper was partially unattached and the floor compartments inside the automobile did not fully close.  Roth told Plaintiff that the dealer would order the parts needed to fix the vehicle.

12.     Soon after the purchase, Plaintiff noticed that the vehicle made noise when turning. Fearing that something was wrong, Plaintiff had the car serviced by Auto Pros.  Roth told Plaintiff that "all sport utility vehicles make noise."  Defendant fixed the bumper but did not address the turning noise or the internal compartments which would not fully close.

13.     About two months later, Plaintiff's vehicle was overheating – she decided to have it serviced again.  Defendant inspected the vehicle and advised that it was not defective nor requiring further repairs.

14.     Around January 2013, the car would not operate at all, and Plaintiff had it towed to non-party, Holden Dodge, Inc., for service.

15.     Holden told Plaintiff that the vehicle needed a new transmission which would cost approximately $6,500.  Holden also said that the automobile was, in fact, not under warranty.

16.     Likewise, Plaintiff purchased a new vehicle because the Dodge Journey was undependable.  Plaintiff continues to make payments on the Journey while it is not being used and parked at her home.

17.     The defects were concealed from Plaintiff.  (Exh. B).

18.     Further, Plaintiff was deceived about the funding source of her retail installment contract and, therefore, deprived of her ability to shop for better financial terms before the transaction.

### IV.     Causes of Action

### COUNT I
### Unfair Trade Practices and Consumer Protection Law ("UTPCPL")

19.     Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

20.     At all times material, the subject vehicle was owned by Plaintiff, Aimee Candelet, and purchased and used primarily for personal, family and/or household use.

21.     At all times material, Defendants are "person(s)" engaged in trade or commerce as that term is defined by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et seq. (hereinafter "UTPCPL").

22.     The conduct of Defendants, by and through their agents, servants, workmen and employees, constituted "unfair or deceptive practices" within the meaning of the UTPCPL.

23.     Pursuant to 73 P.S. §201-3.1, the Automotive Industry Trade Practice Rules and Regulations adopted by the Attorney General for the enforcement of the UTPCPL, shall constitute additional violations of the UTPCPL, and are incorporated by reference as if fully set forth at length herein.

24.     Defendants' pattern of misconduct surrounding the sale and care of the subject vehicles falls within the aforementioned definitions of "Unfair or Deceptive Acts or Practices".

25.    The UTPCPL authorizes the Court, in its discretion, to award up to three (3) times ("treble") the actual damages sustained for violations, for which relief Plaintiff requests.

26.    The actions of Defendants, as aforesaid (incorporated by reference), constitute unfair or deceptive acts and practices under UTPCPL.

## COUNT II
## Magnusson-Moss

27.    Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

28.    Plaintiff, Aimee Candelet, is a "consumer(s)" as defined by 15 U.S.C. §2301(3).

29.    Defendants are "suppliers", "warrantors", and/or "service contractors" as defined by 15 U.S.C §2301(4), (5) and (8).

30.    The subject vehicle is "consumer product" as defined by 15 U.S.C. §2301(1).

31.    The Magnusson-Moss Warranty Improvement Act, 15 U.S.C. §2301, et seq. ("MMA"), requires Defendants to be bound by all warranties implied by State law.  Said warranties are imposed on all transactions in the State in which the vehicles were delivered.

32.    The warranty provided to Plaintiffs is covered under the MMA.

33.    As a direct and proximate result of Defendants' failure to comply with express written warranties and their obligations under MMA, Plaintiff suffered damages and is entitled to bring suit for such damages and other relief.

34.    Defendant's aforesaid pattern of misconduct and deception constitutes a breach of the MMA.

35.    Plaintiff avers that upon successfully prevailing upon the MMA claim herein, all attorneys' fees are recoverable and demanded against Defendants.

36.    The actions of Defendants, as aforementioned constitute violations of the MMA.

## COUNT III
### Truth in Lending Act ("TILA")

37.     Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

38.     Plaintiff is a "consumer" within the meaning of TILA, 15 U.S.C. §1602(h), with respect to the purchase of the car, because Plaintiff is a natural person who bought the car for personal, family, or household purposes.

39.     Defendants are "creditor(s)" within the meaning of TILA, 15 U.S.C. §1602(f), and Regulation Z, 12 C.F.R. §226.2(a)(17), for purposes of this case, because, on information and belief, Defendants have been the payees in thousands of consumer financing transactions payable in at least four installments; thus, Defendants have had at least four such transactions in a year preceding the filing of the Complaint.

40.     TILA, 15 U.S.C. §1638(b)(1), and Regulation Z, 12 C.F.R. §226.17(a)(1) and (b), mandate timely written disclosures of financing terms.

41.     The signing of the Retail Installment Contract constituted the consummation of a consumer credit sale under TILA, 15 U.S.C. §1602(g) and (h).

42.     Defendants violated 15 U.S.C. §1638(b)(1) and 12 C.F.R. §226.17(a)(1) and (b) by not providing Plaintiff with Truth in Lending disclosures, in writing, before consummation of the transaction, in a form that Plaintiff could keep, by rushing Plaintiff through the signing process, and by not providing Plaintiff the opportunity to read or to take the disclosures before the Retail Installment Contract was signed.

43.     Additionally, Defendant stated that the "bank fee" of approximately $3,000 was due to Plaintiff's bad credit. However, on information and belief, this statement was not true. No part of this fee was paid to Defendant, Santander, or any other bank, and Defendant, Auto Pros,

retained the entire bank fee.

44.     By making a false statement regarding the bank fee, Defendant violated the disclosure requirements of 15 U.S.C. §1638(a)(2)(B)(iii) and Regulation Z, 12 C.F.R. §226.18(c)(1)(iii). Had the fee been properly disclosed, Plaintiff, made aware that the entire amount of the fee would go to Defendant, would have negotiated a reduction or elimination of the fee from the purchase price.

45.     In Plaintiff's capacity as a private attorney general, Plaintiff asks this Court to declare the foregoing practice illegal and to permanently enjoin Defendants from violating TILA and Regulation Z, as described above.

46.     Because of the foregoing violation, none of the disclosures mandated by 15 U.S.C. §1638(a) were made in a timely manner.

47.     Because none of the disclosures mandated by 15 U.S.C. §1638(a) were made in a timely manner, none of the disclosures mandated by 15 U.S.C. §1638(a) were in fact made within the meaning of the term "disclose" under the Truth in Lending Act.

48.     Plaintiff, deprived of Plaintiff's right to shop for better financial terms because of the foregoing violation, relied on Defendants' untimely disclosure or non-disclosure of the financing terms mandated by TILA and Regulation Z by agreeing to become bound to the transaction and financing the car through Defendants.

49.     Because of Defendants' untimely disclosure or non-disclosure, Plaintiff was unaware that Plaintiff could have obtained a lower APR and finance charge, had Plaintiff taken an unsigned copy of the retail installment contract and shopped for a lower rate.

50.     Had Plaintiff been aware that Plaintiff could have obtained a lower rate, Plaintiff would have taken an unsigned copy of the retail installment contract and sought, found, and obtained

better financing terms elsewhere.

### COUNT IV
### Equal Credit Opportunity Act ("ECOA")

51.     Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

52.     At all times material, Defendants were in violation of ECOA, 15 U.S.C. §1694(e), et seq. including but not limited to Defendants' failing to report to Plaintiff the adverse action.

### COUNT V
### Motor Vehicle Sales Finance Act ("MVSFA")

53.     Plaintiff incorporates by reference all prior paragraphs as if fully set forth at length herein.

54.     At all times material, Defendants were in violation of the MVSFA, 61 P.S. §601, et seq., including the foregoing (incorporated by reference).

WHEREFORE, Plaintiff demands judgment in her favor and against Defendants, individually, jointly and/or severally, with treble, statutory, compensatory, actual, and punitive damages, together with interest, costs, and such other and further relief as this Honorable Court deems just, including attorneys fees, plus rescission and other and further equitable relief.


WEISBERG LAW

/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esquire
David A. Berlin, Esquire
Attorneys for Plaintiff

# EXHIBIT A

**PENNSYLVANIA**
**MOTOR VEHICLE INSTALLMENT SALE CONTRACT,**   Dated _____   **SIMPLE INTEREST**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $ _____ |
|---|---|---|---|---|
| _____ % | $ _____ | $ _____ | $ _____ | $ _____ |

Your Payment Schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| __ | $ _____ | Monthly, beginning _____ |
| | $ _____ | |

Filing Fees: $ _____

**Security:** You are giving a security interest in the motor vehicle being purchased.

**Prepayment:** If you pay off early, you will not have to pay a penalty.

Late Charge: If a payment is late, you will be charged 2% of the portion of the payment which is late for each month, or part of a month greater than 10 days, that it remains unpaid.

See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.

e means estimate

IF YOU DO NOT MEET YOUR CONTRACT OBLIGATIONS, YOU MAY LOSE THE MOTOR VEHICLE AND PROPERTY THAT YOU BOUGHT WITH THIS CONTRACT, AND/OR MONEY ON DEPOSIT WITH THE ASSIGNEE.

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee.

In this Contract we are the SELLER.

Name _____   Address _____   Zip Code _____

You are the BUYER(S), _____

Name(s) _____   Address(es) _____   Zip Code(s) _____

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

**TRADE-IN:**
You have traded in the following vehicle: _____

Year and Make _____   Description _____

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on your behalf. You warrant and represent to us that any trade-in is free from lien, claim, encumbrance or security interest, except as shown in the Itemization of Amount Financed as the "Lien Payoff."

**PROPERTY INSURANCE:** You may choose the person through whom insurance is obtained against loss or damage to the Vehicle and against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure the Vehicle and keep it insured.

**CREDIT INSURANCE IS NOT REQUIRED:** Credit Life Insurance and Credit Accident & Health (Disability) Insurance are not required to obtain credit, and will not be provided unless you sign below and agree to pay the additional cost(s). Please read the NOTICE OF PROPOSED CREDIT INSURANCE on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of insurance available. All insurance purchased will be for the term of the credit. We may receive a financial benefit from your purchase of credit insurance.

By signing, you select Single Credit Life Insurance, which costs $ _____   What is your age? ____ Years

By signing, you select Single Credit Accident & Health Insurance, which costs $ _____   What is your age? ____ Years

Signature of Buyer to be insured for Single Credit Life Insurance

Signature of Buyer to be insured for Single Credit Accident & Health Insurance

By signing, you both select Joint Credit Life Insurance, which costs $ _____   What are your ages?

By signing, you both select Joint Credit Accident & Health Insurance, which costs $ _____   What are your ages? _____ Percentage to be insured ____ %

1. _____
2. _____
Signatures of both Buyers to be insured for Joint Credit Life Insurance

1. _____
2. _____
Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

Insurer: _____

**VEHICLE:** You have agreed to purchase, under the terms of this Contract, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| U | _____ | _____ | _____ | _____ | | _____ |

Equipped with ___ A.T. ___ P.S. ___ AM-FM Stereo ___ 5 Spd. Other _____
___ A.C. ___ P.W. ___ AM-FM Radio ___ Vinyl Top

**ASSIGNEE:** We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment.

**CO-SIGNER:** Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due and to perform all agreements in this Contract. Co-Signer will not be an Owner of the Vehicle.

**CO-OWNER:** Any person signing the Co-Owner's Security Agreement below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.

**TERMS:** The terms shown in the boxes above are part of this Contract.

**PROMISE TO PAY:** You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment and assigning the Trade-In, if shown above, on or before the date of this Contract, and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee finance costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

**ADDITIONAL TERMS AND CONDITIONS:** THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

**The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.**

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

SELLER _____

**NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

BUYER _____   Date _____

**Itemization of Amount Financed**

| | |
|---|---|
| Cash Price | $ _____ |
| Cash Downpayment | $ _____ |
| Trade-In | |
| Value of Trade-In | $ _____ |
| Lien Payoff to : | $ _____ |
| Unpaid Cash Price Balance | $ _____ |
| To Credit Insurance Company | $ _____ |
| To Public Officials for: License, Tags and Registration | $ _____ |
| Lien Fee | $ _____ |
| To _____ | $ _____ |
| To _____ | $ _____ |
| To _____ | $ _____ |
| To _____ | $ _____ |
| To _____ | $ _____ |
| Amount Financed | $ _____ |
| Finance Charge | $ _____ |
| Total of Payments (Time Balance) | $ _____ |

(right margin, rotated) Paid to Others on Your Behalf — We may retain a portion of amounts marked *

**Payment Schedule** - You agree to pay to us the Amount Financed plus interest in ____ payments of $ _____ each, and a final payment of $ _____ . The first payment will be due on _____ , and then payments will be due on that same day of each month following.

reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place of or to send payments in the address which the Assignee most recently specifies in the written notice to you.

ADDITIONAL TERMS AND CONDITIONS: THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

AUTO PROS

| | |
|---|---|
| SELLER _____ | NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS. |

05/04/2012

BUYER _____ 05/04/2012

BY _____           Date

Date

BUYER _____

Date

CO-SIGNER: YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.
CO-SIGNER'S AGREEMENT: You, the person (or persons) signing below as "Co-Signer," promise to pay to us all sums due on this Contract and to perform all agreements in this Contract. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

| | | |
|---|---|---|
| Co-Signer's Signature | Address | Date |
| Co-Signer's Signature | Address | Date |

CO-OWNER'S SECURITY AGREEMENT: You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Vehicle, give us a Security Interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise To Pay" section. You are giving us the security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

| | | |
|---|---|---|
| Co-Owner's Signature | Address | Date |

**BUYER, CO-SIGNER AND CO-OWNER, AS APPLICABLE, ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

| | | | |
|---|---|---|---|
| BUYER | BUYER | CO-SIGNER | CO-SIGNER OR CO-OWNER |

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

Wolters Kluwer Financial Services © 2004, 2008          To Reorder Form: 1-800-552-9410          PA 123-SLC 3/28/2008

## ADDITIONAL TERMS AND CONDITIONS

**1. SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle, in all parts (called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

**2. HOW THE TOTAL OF PAYMENTS IS COMPUTED:** The Total of Payments is the sum of the Amount Financed and the Finance Charge. The Finance Charge consists solely of interest computed daily on the outstanding balance of the Amount Financed. The Finance Charge shown on the front side has been computed on the assumption that we will receive all payments on their scheduled due dates.

**3. COMPUTING INTEREST:** We will charge interest on a daily basis on the outstanding balance subject to interest on each day of the loan term, including any period for which a late charge is also imposed. The daily interest rate is equal to the Annual Percentage Rate divided by the number of days in that calendar year. Buyer agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge). Early payments will result in less interest being charged. Early and/or late payments will cause the amount of the final payment to change.

**4. LATE CHARGE:** Buyer agrees to pay a late charge for any payment not made within 10 days after its due date. The late charge will be 2% per month on the unpaid amount of the payment. We will consider any part of a month in excess of 10 days to be a full month. The late charge will be due when earned. No late charge will be due if the reason that the payment is late is because, after default, the entire outstanding balance on this Contract is due. No late charge will be due if the only reason that the payment is late is because of a late charge assessed on an earlier payment.

**5. APPLICATION OF PAYMENTS:** We will apply payments in the following order of priority: first to interest; and then to late charges, fees, principal and any other amounts you owe in the order that we choose.

**6. PREPAYMENT:** You may prepay, in full or in part, the amount owed on this Contract at any time without penalty. If you prepay this Contract in part, you agree to continue to make regularly scheduled payments until you pay all amounts due under this Contract. This will reduce the number of payments you will make.

**7. WAIVERS.**

**a.** WAIVER BY SELLER AND ASSIGNEE: We and Assignee waive the right to treat any property as security for the repayment of this Contract, except for the Vehicle and the other security specifically mentioned in this Contract.

**b.** WAIVERS BY BUYER, CO-SIGNER AND CO-OWNER: You agree to make all payments on or before they are due without our having to ask. If you don't, we may enforce our rights without notifying you in advance. You give up any right you may have to require that we enforce our rights against some other person or property before we enforce our rights against you. You agree that we may give up our rights against some other person but not against you. You waive due diligence in collection and all defenses based on suretyship and impairment of collateral or security.

**8. INTEREST AFTER MATURITY AND JUDGMENT:** Interest at the rate provided in this Contract shall continue to accrue on the unpaid balance until paid in full, even after maturity and/or after we get a judgment against you for the amounts due. This will apply even if the maturity occurs because of acceleration. It at any time interest as provided for in this paragraph is not permitted by law, interest shall accrue at the highest rate allowed by applicable law beginning at that time.

**9. YOUR PROMISES ABOUT OUR SECURITY INTEREST:** You will not permit anyone other than us to obtain a security interest or other rights in the Vehicle. You will pay all filing fees necessary for us to obtain and maintain our security interest in the Vehicle. You will assist us in having our security interest noted on the Certificate of Title to the Vehicle. You will not sell or give away the Vehicle. If someone puts a lien on the Vehicle, you will pay the obligation and clear the lien.

**10. YOUR PROMISES ABOUT THE VEHICLE:** You will keep the Vehicle in good condition and repair. You will pay all taxes and charges on the Vehicle. You will pay all costs of maintaining the Vehicle. You will not abuse the Vehicle or permit anything to be done to the Vehicle which will reduce its value, other than for normal wear and use. You will not use the Vehicle for illegal purposes or for hire or lease. You will not move the Vehicle from your address shown on the front of this Contract to a new permanent place of garaging without notifying us in advance.

**11. YOUR PROMISES ABOUT INSURANCE:** You will keep the Vehicle insured against fire, theft and collision until all sums due us are paid in full. The insurance coverage must be satisfactory to us and protect your interests and our interests at the time of any insured loss. The insurance must name us as "loss-payee" on the policy. The insurance must be written by an insurance company qualified to do business in Pennsylvania and licensed to sell insurance in the state where the Vehicle is permanently garaged. The insurance policy must provide us with at least ten (10) days prior written notice of any cancellation or reduction in coverage. On request, you shall deliver the policy or other evidence of insurance coverage to us. In the event of the loss or damage to the Vehicle, you will immediately notify us in writing and file a proof of loss with the insurer.

**a.** OUR RIGHT TO FILE PROOF OF LOSS: In the event of any loss or damage to the Vehicle, if you fail or refuse to file a claim or proof of loss with the insurance company, you agree that the Seller, Assignee, any subsequent assignee, or any authorized employee of any of them ("we") may file a proof of loss with the insurance company, in your name and acting as your agent, with respect to the insured claim. You agree that you do not have the right to and will not revoke the power you have given us to file a proof of loss. You agree that we may exercise this power for our benefit and not for your benefit, except as provided in this Contract and by law.

**b.** OUR RIGHT TO ENDORSE INSURANCE CHECKS: You agree that the Seller, Assignee, any subsequent assignee, or an authorized employee of any of them ("we") may endorse your name, acting as your agent, to any check, draft or other instrument we receive in payment of an insured loss or return of insurance premiums. You agree that you do not have the right to and will not revoke the power you have given us to make your endorsement. You agree that we may exercise this power for our benefit and not for your benefit, except as provided in this Contract and by law.

**c.** USE OF PROCEEDS: We may apply any insurance proceeds we receive to repair or replace the Vehicle if, in our opinion, it is economically feasible and you are not then in default of this Contract. Otherwise, we will apply the insurance proceeds to reduce the unpaid balance due us. After the balance due us is paid, any excess will belong to you.

**12. OUR RIGHTS IF YOU BREAK YOUR PROMISES ABOUT THE SECURITY INTEREST, VEHICLE OR INSURANCE:** If you fail to keep your promises to pay filing fees, taxes, liens or the costs necessary to keep the Vehicle in good condition and repair, we may advance any money you promised to pay. If you fail to keep your promises about required insurance, we only advance money to obtain insurance to cover loss or damage to the Vehicle. We have the choice of whether or not to advance any money for these purposes. Such insurance will be limited to an amount not greater than you owe us on this Contract. THE INSURANCE WE PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE YOU LESS COVERAGE THAN INSURANCE YOU COULD PURCHASE YOURSELF.

We will add any money we advance on your behalf to the balance on which we impose Finance Charges at the Annual Percentage Rate of this Contract. You agree to repay the money advanced as we alone may specify: (i) immediately on demand, or (ii) along with your monthly payments. If we choose to allow you to repay the money advanced along with your monthly payments, we can choose the amount of these payments and how long you have to repay. If any of our rights stated in this paragraph are not permitted by law, we still have the other rights mentioned. Our payments on your behalf will not cure your failure to perform your promises in this Contract.

**13. DEFAULT:** In this paragraph "You" means the Buyer, Co-Signer and Co-Owner, or any one of them. You will be in "Default" of the Contract if any one or more of the following things happen:

**a.** You do not make any payment on or before it is due; or

**b.** You do not keep any promise you made in this Contract; or

**c.** You do not keep any promise you made in another Contract, Note, Loan or Agreement with Seller or Assignee; or

**d.** You made any untrue statement in the credit application for this Contract; or

**e.** You committed any forgery in connection with this Contract; or

**f.** You die, are convicted of a crime involving fraud or dishonesty, or are found by a court with jurisdiction to do so to be incapacitated; or

**g.** You file bankruptcy or insolvency proceedings, or anyone files bankruptcy or insolvency proceedings against you; or

**h.** You take the Vehicle outside the United States or Canada without our written consent; or

**i.** You use the Vehicle or allow someone else to use it in a way that causes it not to be covered by your insurance; or

**j.** You do something that causes the Vehicle to be subject to confiscation by government authorities; or

**k.** The Vehicle is lost, stolen, destroyed or damaged beyond economical repair, and not fixed or found within a reasonable time; or

**l.** Another creditor tries to take the Vehicle or your money on deposit with Assignee by legal process.

**14. OUR RIGHTS IF YOU ARE IN DEFAULT OF THIS CONTRACT:** If you are in Default of this Contract, we may enforce our rights according to law. We may also do the things specifically mentioned in this Contract. We may do one of these things and at the same time or later do another. Some of the things we may do are the following:

**a.** ACCELERATION: We can demand that you pay to us the entire unpaid balance owing on the Contract and all unpaid Finance Charges and other money due. You agree that you will pay this money to us in one single payment immediately upon receiving our demand.

**b.** REPOSSESSION: We can repossess the Vehicle, unless prohibited by law. We can do this ourselves, have a qualified person do it for us, or have a government official (by replevin) do it for us. You agree that we can peaceably come on to your property to do this. We may take any other things found in the Vehicle, but will return these things to you if you ask. If you want these things back, you may reclaim them within thirty (30) days of our making you a Notice of Repossession. If you do not reclaim the things found in the Vehicle within that time, we may dispose of these things in the same manner as the motor vehicle. You agree that we may use your license plates in repossessing the Vehicle and taking it to a place for storage.

**c.** VOLUNTARY DELIVERY: You can ask us to give us the Vehicle at a reasonably convenient place. You agree to give us the Vehicle if we ask.

**d.** DELAY IN ENFORCEMENT: We can delay enforcing our rights under this Contract without losing any rights.

**15. SOME THINGS YOU SHOULD KNOW IF WE REPOSSESS THE VEHICLE:** If we repossess without using a government official (by replevin):

**a.** NOTICE: We will send you a Notice of Repossession to your last address we know about. This Notice will tell you how to buy back (redeem) the Vehicle. You will NOT have the right to reinstate the Contract. This means you will have to pay the total balance on the Contract and other amounts due. You may not get the Vehicle back by paying delinquent installments. This Notice will tell you other information required by law.

**b.** REDEMPTION: You have the right to buy back (redeem) the Vehicle within 15 days of the mailing of the Notice and at any later time before we sell the Vehicle. If you redeem the Vehicle, we will deliver the Vehicle to you at a place as provided by law, as soon as is reasonably possible, but in not more than ten (10) business days of our receipt of the funds required. If you do not redeem, you give up all claim to the Vehicle.

**c.** SALE: If you don't redeem, we will sell the Vehicle. The money received at sale will be used to pay costs and expenses you owe, and then to pay the amount you owe on the Contract.

**d.** SURPLUS OR DEFICIENCY: If there is money left, we will pay it to the Buyer. If there is not enough money from the sale to pay what you owe, Buyer and Co-Signer agree to pay what is still owed to us.

**e.** EXPENSES: You agree to pay the costs of repossessing, storing, repairing, preparing for sale and selling the Vehicle as may be allowed by law. These costs will only be due if:

1. Default exceeds fifteen (15) days at the time of repossession;

2. The amount of costs are actual, necessary and reasonable; and

3. We can prove the costs were paid.

**16. HEIRS AND PERSONAL REPRESENTATIVES BOUND:** After your death, this Contract shall be enforceable against your heirs and personal representatives of your estate.

**17. GOVERNING LAW:** This Contract is to be interpreted according to the law of Pennsylvania.

**18. SEVERABILITY OF PROVISIONS:** If for any reason any part of this Contract shall become illegal, void or unenforceable, that part shall not be a part of this Contract.

**19. ASSIGNMENT BY BUYER:** Buyer shall not assign this Contract.

**20. THERE ARE NO WARRANTIES BY SELLER, EXPRESSED OR IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, UNLESS WE HAVE GIVEN YOU A SEPARATE WRITTEN WARRANTY OR UNLESS SELLER ENTERS INTO A SERVICE CONTRACT WITH BUYER WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.**

**Buyer's Guide Window Sticker.** If the Car which is described on the face of this Contract has a Buyer's Guide Window Sticker required by the Federal Trade Commission Used Car Trade Regulation Rule, the following notice applies:

**The information you see on the window form for this Vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.**

NOTICE—ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER

---

NOTICE OF PROPOSED CREDIT INSURANCE

The signer(s) of this Contract hereby take(s) notice that Group Credit Life Insurance coverage or Group Credit Accident and Disability Insurance coverage will be applicable to this Contract if so marked on the front of this Contract, and each such type of coverage will be written by the insurance company named. This insurance, subject to acceptance by the insurer, covers only the person or persons signing the request for such insurance. The amount of charge is indicated for each type of Credit Insurance to be purchased. The term of insurance will commence as of the date the indebtedness is incurred and will expire on the original scheduled maturity date of the indebtedness. Subject to acceptance by the insurer

genuine, the signatures thereon are not forgeries, arose from the sale of the Vehicle therein described, and all parties thereto are of full age and had capacity to contract; the description of the Vehicle and extra equipment is correctly stated in the within Contract; any manufacturer's rebate or similar allowance were actually received and no part thereof consisted of notes, post-dated checks, other credit advanced by us to Buyer or rebates or similar payments from us to the Buyer (however manufacturer rebates may constitute all or a part of the downpayment); all warranties and statements therein are true; there is owing thereon the Amount Financed plus interest at the Annual Percentage Rate of the Contract set forth therein; we are duly licensed under the Pennsylvania Motor Vehicle Sales Finance Act and have duly complied with all requirements thereof with respect to the transaction and with the federal Truth-in-Lending Act and with any other federal or state law, rule or regulation applicable to this Contract; a motor vehicle title certificate showing a lien or encumbrance in favor of Assignee has been or will be applied for promptly; the registration of the Vehicle has not been suspended and the Seller knows of no facts which may result in the suspension of said registration under the Pennsylvania Motor Vehicle Financial Responsibility Act, the Buyer(s) named in the within Contract is (are) personally known to the Seller to be the same identical person(s) whose signature(s) is (are) affixed to this Contract; and Seller has no knowledge of facts impairing the validity or value of the Contract. If any such warranties or representations should be breached at any time, Seller shall repurchase said Contract from Assignee, on demand, and will pay therefor, in cash, the amount owing thereon, computed as set forth below, and said remedy shall be cumulative and not exclusive, and shall not affect any other right or remedy that Assignee might have at law or in equity against Seller. In the event that Buyer fails or refuses to make any payment due hereunder on the assertion, either oral or written, that the Vehicle is defective, not as represented to the Buyer by Seller, or that Seller refuses to honor any warranty or service agreement of Seller or manufacturer, Seller agrees that, on being advised by Assignee of such claim of Buyer, Seller will repurchase the Contract from Assignee and pay Assignee for same immediately in accordance with the repurchase terms set forth below, and Seller further agrees to hold Assignee harmless from any other claims of Buyer, including attorneys' fees, costs and expenses incurred in defending against claims asserted by Buyer and including claims for refund of payments made by Buyer to Assignee. If the Seller contracts to purchase property insurance on behalf of the Buyer, and that insurance is cancelled by the insurance company prior to its scheduled expiration date, Seller will attempt to place comparable coverage with another insurance company on behalf of the Buyer. If Seller is unable to do so, Seller will notify Buyer and pay to Buyer any additional costs incurred by the Buyer in obtaining replacement insurance for the unexpired period of the original insurance policy. By signing and dating the Contract, as Seller, delivering the Contract to the Assignee and accepting payment for it, Seller authorizes the Assignee to act as the Seller's agent for the purpose of completing or correcting the identification of the Assignee in this Assignment to reflect the true Assignee who purchased the Contract and/or for the purpose of signing Seller's name to this Assignment, without recourse, if the Assignment is delivered without the Seller's signature. Assignee may exercise the power given in this paragraph for the benefit of the Assignee and not for the benefit of the Seller. Seller does not have the right to and agrees not to revoke the power given in this paragraph.

In the event that Seller is required by this Assignment to repurchase the Contract and/or Vehicle, Seller shall pay to Assignee, in cash, the full unpaid balance of the Contract as of the date of repurchase, plus any then earned Finance Charge and any and all costs and expenses paid or incurred by Assignee in respect thereto, including reasonable attorneys' fees, in connection with claims by or against Buyer, Owner or persons in possession of the Vehicle and/or by or against Seller.

For value received, Seller hereby sells, assigns and transfers unto the Assignee, its successors and assigns, the within Contract, all moneys due and to become due thereunder, and all right, title and interest in and to the Vehicle therein described, with full power in the Assignee in its or our name to take such legal or other action which we might have taken save for this Assignment. Unless Seller marks either of the endorsements below, titled "WITH FULL RECOURSE" or "WITH REPURCHASE," Seller's assignment shall, except for the provisions of the paragraph titled "Assignment," be without recourse.

☐ WITH FULL RECOURSE—Seller agrees that, in addition to the paragraph above titled "Assignment," in the event of default by Buyer in the full payment on the due date thereof of any installment payable under the Contract or in the prompt performance of any other obligation to be performed under the Contract by Buyer, Seller will, on demand by Assignee, forthwith repurchase the Contract from Assignee for a repurchase price, in cash, computed as set forth above.

☐ WITH REPURCHASE—Seller agrees that, in addition to the provisions of the paragraph above titled "Assignment," in the event of any default by Buyer which shall entitle Assignee to repossess the Vehicle, Seller will, if the Vehicle is repossessed by Assignee and delivered to Seller, and without regard to the then condition of the Vehicle, forthwith repurchase the Contract and the Vehicle from Assignee for a repurchase price, in cash, computed as set forth above.

By signing below, we agree to the terms of the Assignment.

Seller _____  By _____



6350 HARRISON AVE.
PHILADELPHIA PA 19149-
215-535-3334

# RETAIL PURCHASE AGREEMENT

Purchaser's Name(s): AIMEE CANDELET

Address: 3345 AMBER ST               PHILADELPHIA, PA 19134

Home Telephone: 237-707-6157    Work Telephone: 215-666-1776

Driver's License/State I.D. # 24937037          Issuing State: PA

Deal Number: 9996838

Date: 05/04/2012

County:

DOB: 02/04/76

Exp. Date:

The above information has been requested so that we may verify your identity in accordance with the USA Patriot Act. By signing below, you represent that you are at least 18 years of age and have authority to enter into this Agreement. The Odometer Reading for the Used Vehicle you are purchasing is accurate unless indicated otherwise. Please refer to the Federal Mileage Statement for full disclosure.

| YEAR 2008 | MAKE Dodge | MODEL Journey | COLOR Silver | STOCK NO. 5250 |
|---|---|---|---|---|
| SERIAL NO. 3D4GG57V19T559954 | | ODOMETER READING  ☐ Not Accurate   65488 | | SALESPERSON: |

| WARRANTY STATEMENT | | |
|---|---|---|
| Any warranties by a manufacturer or supplier other than our Dealership are theirs, **not** ours, and only such manufacturer or supplier shall be liable for performance under such warranties. We neither assume nor authorize any other person to assume for us any liability in connection with the sale of the Vehicle and the related goods and services. If we enter into a service contract with you at the time of, or within 9 days of, the date of this transaction, we may not limit or modify the implied warranties. **CONTRACTUAL DISCLOSURE STATEMENT (USED VEHICLES ONLY)** The information you see on the window form for this Vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale. | CASH PRICE OF USED VEHICLE | 15655.00 |
| | OTHER GOODS/SERVICES: | |
| | GAP | N/A |
| | SERVICE CONTRACT | N/A |
| ☐ **AS-IS: THIS MOTOR VEHICLE IS SOLD AS-IS** *WITHOUT ANY WARRANTY EITHER* **EXPRESS OR IMPLIED.   THE PURCHASER WILL BEAR THE ENTIRE EXPENSE OF REPAIRING OR CORRECTING ANY DEFECTS THAT PRESENTLY EXIST OR THAT MAY OCCUR IN THE VEHICLE.** We expressly disclaim all express or implied warranties, including any implied warranties of merchantability or fitness for a particular purpose. | | |
| ☐ **Used Vehicle Limited Warranty Applies.** A copy will be provided with this Agreement. Any implied warranties apply for the duration of the Limited Warranty. We hereby disclaim any other express warranties. | TOTAL SELLING PRICE | 15655.00 |
| | LESS TRADE-IN ALLOWANCE | N/A |
| ☐ **Balance of Manufacturer's Limited Warranty Applies.** We will provide a copy of the Manufacturer's Limited Warranty to you or instruct you how to obtain a copy. | | |
| ☐ If this box is marked, you have entered into a Service Contract with _____. We will provide a copy of the Service Contract to you or instruct you on how to obtain a copy. | SUBTOTAL - TAXABLE PRICE | 15655.00 |
| TRADE-IN VEHICLE INFORMATION | SALES TAX | 1253.40 |
| Year:       Make:       Model:       Color: | PLUS BALANCE OWED ON TRADE-IN | N/A |
| Serial No.                Odometer Reading           Not Accurate | DOCUMENTARY FEE | 81.50 |
| | REGISTRATION FEE | 55.50 |
| Trade-In Allowance  N/A           Balance Owed & Lienholder  N/A   N/A | LIEN FEE | 5.00 |
| ☐ **DEPOSIT:** The sum of $_____ was received from you as a Deposit. It is non refundable. | ONLINE REGISTRATION FEE | |
| | ONLINE DEALER FEE | |
| X _____ | MESSENGER FEE | |
| ***DOCUMENTARY FEE:** This fee is charged to compensate the Dealership for providing administrative and documentary services and for costs incurred in carrying out the requirements of applicable federal and state laws. This is NOT a state mandated fee. | NOTARY FEE | N/A |
| | TOTAL DUE | 17052.40 |
| OTHER MATERIAL UNDERSTANDING AND INTEGRATED DOCUMENTS | LESS DEPOSIT (Non-refundable) | N/A |
| | LESS REBATE | N/A |
| _____ | LESS CASH | 8500.00 |
| _____ | | N/A |
| _____ | UNPAID BALANCE DUE | 10552.40 |

I have read and accept the terms and conditions of this Agreement, and hereby acknowledge that this Agreement is complete and accurately reflects the Agreements between the Dealership and myself. I further acknowledge receipt of a copy of this Agreement. This Agreement is not binding upon either Dealer or Purchaser until signed by an Authorized Dealership Representative. YOU, THE PURCHASER, MAY CANCEL THIS AGREEMENT AND RECEIVE A FULL REFUND ANY TIME BEFORE RECEIPT OF A COPY OF THIS AGREEMENT SIGNED BY AN AUTHORIZED DEALERSHIP REPRESENTATIVE BY GIVING WRITTEN NOTICE OF CANCELLATION TO THE DEALERSHIP.

_____          _____
Purchaser                                          Accepted by Authorized Dealership Representative

_____
Purchaser

**MV-1 (4-10)**

## A. VEHICLE DESCRIPTION

| MAKE OF VEHICLE: Dodge | VEHICLE IDENTIFICATION NUMBER (VIN), IF TRACING REQUIRED, TAPE SECURELY TO REVERSE SIDE OF THIS COPY: 3D4GG57V19T559994 | BODY TYPE (SDN, TK, BUS, ETC.): Hatch | MODEL YEAR: 2009 | PURCHASE PRICE (See note on Reverse): 15565.00 |

| GROSS VEHICLE WT RATING | FUEL TYPE ☐ GASOLINE ☐ DIESEL ☐ ELECTRIC ☐ HYBRID ☐ PROPANE ☐ OTHER | DIN/MECHANIC# | | LESS TRADE-IN: N/A |

| CHECK THE APPROPRIATE BLOCK IF THE VEHICLE IS: ☐ TO BE USED OR WAS FORMERLY USED AS A TAXI OR A POLICE VEHICLE (IF APPLICABLE) | AUTHORIZED NOTARY PUBLIC OR CERTIFIED INSPECTION MECHANIC (PRINT NAME) | TAXABLE AMOUNT: 15565.00 |

## B. APPLICANT INFORMATION

| LAST NAME (OR FULL BUSINESS NAME): CANDELET, ALVER | FIRST NAME | MIDDLE NAME | PA DL/PHOTO ID# OR 24999637 | DATE OF BIRTH: 02/08/78 | SALES TAX: X 0% (08), X 7% (07) OR X 8% (08): 1252.40 |

| CO-PURCHASER LAST NAME | FIRST NAME | MIDDLE NAME | PA DL/PHOTO ID# | DATE OF BIRTH | LESS TAX CREDIT: N/A |

| STREET: 3355 AMBER ST | DATE ACQUIRED/PURCHASED: 05/04/2012 | COUNTY CODE | 1 SALES TAX DUE: 1252.40 |

| CITY: PHILADELPHIA | STATE: PA | ZIP CODE: 19134 | DEALER ID NUMBER (IF APPLICABLE) | REFER TO COUNTY CODES LISTING ON REVERSE SIDE OF YELLOW COPY | 1A EXEMPTION REASON CODE |

NOTE: If a co-purchaser and/or your spouse is listed and you want the title to be listed as "Joint Tenants with Right of Survivorship" (On death of one owner, title goes to surviving owner) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (On death of one owner, interest of deceased owner goes to his/her heirs or estate.)

NOTE: IF THE VEHICLE IS TO BE USED AS A DAILY RENTAL OR LEASED VEHICLE, CHECK THIS BLOCK ☐. IF BLOCK IS CHECKED, COMPLETE AND ATTACH FORM MV-III.

| | 1B EXEMPTION NO |

## C. MILEAGE INFORMATION

| ☐ REFLECTS THE AMOUNT OF MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS | ☐ IS NOT THE ACTUAL MILEAGE WARNING - ODOMETER DISCREPANCY | ODOMETER READING: 66498 ☒ TENTHS | 1C PTA NO. |

WARNING: FEDERAL AND STATE LAWS REQUIRE THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT.

| | 2 TITLE FEE: 22.50 |

## D. LIEN INFORMATION

| IF NO LIEN, CHECK ☐ IS THIS AN ELT? (IF YES, PIN REQUIRED) ☐ YES ☐ NO | IF NO 2ND LIEN, CHECK ☐ IS THIS AN ELT? (IF YES, PIN REQUIRED) ☐ YES ☐ NO | 3 LIEN FEE: 5.00 |

| 1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER | 2ND LIENHOLDER FINANCIAL INSTITUTION NUMBER | |

| 1ST LIENHOLDER NAME: SANTANDER CONSUMER USA INC | 2ND LIENHOLDER NAME | 4 REGISTRATION OR PROCESSING FEE: N/A |

| STREET: PO BOX 25126 | STREET | FEE EXEMPT NUMBER AS ASSIGNED BY THE DEPARTMENT: N/A |

| CITY: LEHIGH VALLEY | STATE: PA | ZIP CODE: 18002 | CITY | STATE | ZIP CODE | |

## E. VEHICLE TRADED

| MAKE OF VEHICLE | VEHICLE IDENTIFICATION NUMBER (VIN) | MODEL YEAR | 5 DUPLICATE REG. FEE NO. OF CARDS: N/A |

| BODY TYPE (SDN, BUS, TK, ETC.) | CONDITION OF VEHICLE ☐ GOOD ☐ FAIR ☐ POOR | |

## F. ADDITIONAL VEHICLE INFORMATION

| PASSENGER TAXI/BUS | ☐ PASSENGER ☐ TAXI ☐ LIMOUSINE ☐ SCHOOL BUS ☐ MASS TRANSIT ☐ OTHER BUS | SEATING CAPACITY | 6 TRANSFER FEE: N/A |

| MOTORCYCLE MOTOR DRIVEN CYCLE MOPED | CYLINDER CAPACITY 50CC OR LESS ☐ YES ☐ NO | BRAKE HORSEPOWER ☐ 1.5 OR LESS ☐ 1.6 TO 5.0 ☐ OVER 5.0 | 7 INCREASE FEE: N/A |

| | OPERABLE PEDALS ☐ YES ☐ NO | MAX DESIGN SPEED 25 MPH OR LESS ☐ YES ☐ NO | |

| MOTORHOME | AUTOMATIC TRANSMISSION ☐ YES ☐ NO | DESIGNED/ALTERED FOR ROAD USE ☐ YES ☐ NO | 8 REPLACEMENT FEE: N/A |

| | CHASSIS MFR | BODY MAKE | |

| TRAILER & VEHICLES BELOW | NUMBER OF AXLES | REG. REGISTERED GROSS WT (INCLUDING LOAD) | 9 TOTAL PAID (ADD 1 THRU 8) Send One Check In This Amount → 1279.90 |

| | SUM OF GAWR'S | UNLADEN WT (EMPTY) | |

| TRUCK TRUCK TRACTOR | ☐ REQ. REGISTERED GROSS COMBINATION WT | GROSS COMBINATION WT RATING | |

## G. APPLICATION FOR REGISTRATION

| ☐ ORIGINAL PLATE – CHECK ONE | ☐ TRANSFER OF PREVIOUSLY ISSUED PLATE | ☐ TRANSFER & REPLACEMENT OF PLATE |
| ☐ PLATE TO BE ISSUED BY DEPARTMENT (PROOF OF INSURANCE MUST BE ATTACHED.) | ☐ TRANSFER & RENEWAL OF PLATE | ☐ TRANSFER OF PLATE & REPLACEMENT OF STICKER |

| PLATE NO. | REASON FOR REPLACEMENT: ☐ LOST ☐ DEFACED ☐ STOLEN ☐ NEVER RECEIVED (Lost in Mail) |

| ☐ EXCHANGE PLATE TO BE ISSUED BY DEPARTMENT | EXPIRES: Month Year | NOTE: If "NEVER RECEIVED" block is checked, applicant must complete Form MV-44 |

| ☐ TEMPORARY PLATE ISSUED BY FULL AGENT (Note: This plate will expire 90 days from date of issuance.) | TRANSFERRED FROM TITLE NO | VIN |

| H2E16-T21 TEMP. PLATE NO. | SIGNATURE OF PERSON FROM WHOM PLATE IS BEING TRANSFERRED (IF OTHER THAN APPLICANT) | SIGN HERE | RELATIONSHIP TO APPLICANT |

| INSURANCE COMPANY NAME: STATE FARM | NAIC NO. | POLICY NO. (OR ATTACH BINDER): 050955621385700 | POLICY EFFECTIVE | POLICY EXPIRATION DATE: 05/21/2012 |

| ISSUING AGENT INFORMATION | I CERTIFY THAT ON MONTH MAY DAY 04 YEAR 2012 I HAVE CHECKED TO DETERMINE THAT THE VEHICLE IS INSURED AND ISSUED TEMPORARY REGISTRATION TO THE ABOVE APPLICANT, IN COMPLIANCE WITH ALL APPLICABLE PROVISIONS OF THE VEHICLE CODE AND DEPARTMENT REGULATIONS | ISSUING AGENT (PRINT NAME): AUTO PROS | AGENT NO. |
| | | ISSUING AGENT SIGNATURE | TELEPHONE NO. 215-743-3334 |

## H. NOTARIZATION

| SUBSCRIBED AND SWORN TO BEFORE ME | MONTH 05 | DAY 04 | YEAR 2012 | I/WE CERTIFY THAT I/WE HAVE EXAMINED AND SIGNED THIS APPLICATION AFTER ITS COMPLETION. I/WE FURTHER CERTIFY THAT ALL STATEMENTS HEREIN ARE TRUE AND CORRECT AND MAKE APPLICATION FOR CERTIFICATE OF TITLE FOR THE VEHICLE DESCRIBED IN SECTION A. IF ANY EXEMPTION IS CLAIMED, THE PURCHASER FURTHER CERTIFIES THAT HE/SHE IS AUTHORIZED TO CLAIM THIS EXEMPTION. I/WE ACKNOWLEDGE THAT I/WE MAY LOSE MY/OUR OPERATING PRIVILEGE(S) OR VEHICLE REGISTRATION FOR FAILURE TO MAINTAIN FINANCIAL RESPONSIBILITY ON THE CURRENTLY REGISTERED VEHICLE FOR THE PERIOD OF REGISTRATION. I/WE ACKNOWLEDGE THAT I/WE MAY BE SUBJECT TO A FINE NOT EXCEEDING $5,000 AND IMPRISONMENT OF NOT MORE THAN TWO YEARS FOR ANY FALSE STATEMENT THAT I/WE MAKE ON THIS APPLICATION! |

| SIGNATURE OF PERSON ADMINISTERING OATH | Signature of Purchaser or Authorized Signer | Telephone No. 267 707-6187 |

| SIGN IN PRESENCE OF NOTARY | Signature of Co-Purchaser/Title of Authorized Signer | MESSENGER NO. |

3. APPLICANT'S COPY/TEMPORARY REGISTRATION VALID FOR 20 DAYS

MV-4ST (4-10)

I. TAX/FEES | 1ST ASSIGNMENT | 2ND ASSIGNMENT

**A. VEHICLE PURCHASED**

PA TITLE NUMBER (AS SHOWN ON ATTACHED TITLE) | MAKE OF VEHICLE DODGE | MODEL YEAR 2009

PURCHASE PRICE (See Note on Reverse) 15655.00

VEHICLE IDENTIFICATION NUMBER

CONDITION ☑ GOOD ☐ FAIR ☐ POOR

LESS TRADE-IN

**B. SELLER**

LAST NAME (OR FULL BUSINESS NAME) | FIRST NAME | MIDDLE NAME

TAXABLE AMOUNT 15655.00

CO-SELLER

**C. 1ST PURCHASER**

LAST NAME (OR FULL BUSINESS NAME) | FIRST NAME | MIDDLE NAME | PA DL/PHOTO ID# OR BUS. ID# | DATE OF BIRTH
CANDELET, AIMEE

1. SALES TAX DUE X 6% (.06)  X 7% (.07) OR X 8% (.08) (See Note on Reverse) 1252.4

CO-PURCHASER LAST NAME | FIRST NAME | MIDDLE NAME | PA DL/PHOTO ID# | DATE OF BIRTH

1A. EXEMPTION REASON CODE (must be a number from 1 to 23 or U)

STREET 3305 ARDEN ST

COUNTY CODE

1B. FIRST ASSIGNMENT EXEMPTION NO. | 1B. SECOND ASSIGNMENT EXEMPTION NO

CITY ___ STATE PA ZIPCODE ____ | DATE ACQUIRED/PURCHASED

REFER TO COUNTY CODES LISTING ON REVERSE SIDE OF YELLOW COPY

2. TITLE FEE

3. LIEN FEE

**D. 2ND PURCHASER**

LAST NAME (OR FULL BUSINESS NAME) | FIRST NAME | MIDDLE NAME | PA DL/PHOTO ID# OR BUS ID# | DATE OF BIRTH

4. REGISTRATION OR PROCESSING FEE

CO-PURCHASER LAST NAME | FIRST NAME | MIDDLE NAME | PA DL/PHOTO ID# | DATE OF BIRTH

FEE EXEMPT NUMBER AS ASSIGNED BY THE DEPARTMENT

STREET

COUNTY CODE

5. DUPLICATE REG. REG NO OF CARDS

CITY | STATE | ZIP CODE | DATE ACQUIRED PURCHASED

REFER TO COUNTY CODES LISTING ON REVERSE SIDE OF YELLOW COPY

6. TRANSFER FEE

**E. VEHICLE TRADED**

MAKE OF VEHICLE | VEHICLE IDENTIFICATION NUMBER

MODEL YEAR | BODY TYPE (2P, TK, ETC.)

CONDITION ☐ GOOD ☐ FAIR ☐ POOR

7. REPLACEMENT FEE

8. REPLACEMENT FEE 1316.00

**F. APPLICATION FOR REGISTRATION**

☐ PLATE TO BE ISSUED BY DEPARTMENT (PROOF OF INSURANCE MUST BE ATTACHED)
☐ EXCHANGE PLATE TO BE ISSUED BY DEPARTMENT
☐ TEMPORARY PLATE ISSUED BY FULL AGENT (Note: This plate will expire 90 days from date of issuance)

☐ TRANSFER OF PREVIOUSLY ISSUED PLATE
☐ TRANSFER & RENEWAL OF PLATE
☐ TRANSFER & REPLACEMENT OF PLATE
☐ TRANSFER OF PLATE & REPLACEMENT OF STICKER

TOTAL PAID (ADD 1 THRU 3) 9.

11. GRAND TOTAL (ADD 9 & 10) 1316.00

10.

SEND ONE CHECK IN THIS AMOUNT →

PLATE NO

REASON FOR REPLACEMENT ☐ LOST ☐ DEFACED ☐ STOLEN ☐ NEVER RECEIVED (Lost in Mail)

EXPIRES Month ___ Year

NOTE: If "NEVER RECEIVED" block is checked, applicant must complete Form MV-44

TRANSFERRED FROM TITLE NO | VIN

TEMP PLATE NO.  ____

SIGNATURE OF PERSON FROM WHOM PLATE IS BEING TRANSFERRED (IF OTHER THAN APPLICANT)

SIGN HERE ▶

RELATIONSHIP TO APPLICANT

VEHICLE PURCHASED WEIGHT INFORMATION (IF APPLICABLE) | GVWR | UNLADEN WEIGHT | REG. REG. GROSS WT. INCLUDING LOAD | REQ. REG. GROSS COMB. WT. (IF APPLICABLE)

INSURANCE COMPANY NAME | POLICY NO (OR ATTACH BINDER) | POLICY EFFECTIVE | POLICY EXPIRATION DATE

ISSUING AGENT INFORMATION

I CERTIFY THAT ON MONTH ___ DAY ___ YEAR ___ I HAVE CHECKED TO DETERMINE THAT THE VEHICLE IS INSURED AND ISSUED TEMPORARY REGISTRATION TO THE ABOVE APPLICANT, IN COMPLIANCE WITH ALL APPLICABLE PROVISIONS OF THE VEHICLE CODE AND DEPARTMENT REGULATIONS.

ISSUING AGENT (PRINT NAME) | ISSUING AGENT SIGNATURE | AGENT NO | TELEPHONE NO

**G. CERTIFICATION**

I/WE CERTIFY THAT I/WE HAVE EXAMINED AND SIGNED THIS APPLICATION AFTER ITS COMPLETION. I/WE FURTHER CERTIFY THAT ALL STATEMENTS HEREIN ARE TRUE AND CORRECT AND MAKE APPLICATION FOR CERTIFICATE OF TITLE FOR THE VEHICLE DESCRIBED IN SECTION A. IF ANY EXEMPTION IS CLAIMED, I/WE FURTHER CERTIFY THAT HE/SHE IS AUTHORIZED TO CLAIM THIS EXEMPTION. I/WE ACKNOWLEDGE THAT I/WE MAY LOSE MY/OUR OPERATING PRIVILEGE(S) OR VEHICLE REGISTRATION FOR FAILURE TO MAINTAIN FINANCIAL RESPONSIBILITY ON THE CURRENTLY REGISTERED VEHICLE FOR THE PERIOD OF REGISTRATION. I/WE ACKNOWLEDGE THAT I/WE MAY BE SUBJECT TO A FINE NOT EXCEEDING $5,000 AND IMPRISONMENT OF NOT MORE THAN TWO YEARS FOR ANY FALSE STATEMENT THAT I/WE MAKE ON THIS APPLICATION.

1ST ASSIGNMENT | Signature of First Purchaser or Authorized Signer | Telephone No ( )

| Signature of Co-Purchaser/Title or Authorized Signer

2ND ASSIGNMENT | Signature of Second Purchaser or Authorized Signer | Telephone No ( )

| Signature of Co-Purchaser/Title or Authorized Signer

**H. ADDITIONAL TITLE INFORMATION**

NOTE: IF A CO-PURCHASER OTHER THAN YOUR SPOUSE IS LISTED AND YOU WANT THE TITLE TO BE LISTED AS "JOINT TENANTS WITH RIGHT OF SURVIVORSHIP" (ON DEATH OF ONE OWNER, TITLE GOES TO SURVIVING OWNER.) CHECK HERE ☐. OTHERWISE, THE TITLE WILL BE ISSUED AS "TENANTS IN COMMON" (ON DEATH OF ONE OWNER, INTEREST OF DECEASED OWNER GOES TO HIS/HER HEIRS OR ESTATE.)

NOTE: IF THE VEHICLE IS TO BE USED AS A DAILY RENTAL OR LEASED VEHICLE, CHECK THIS BLOCK ☐. IF BLOCK IS CHECKED, COMPLETE AND ATTACH FORM MV-1L

MESSENGER NO.

S. APPLICANT'S COPY/TEMPORARY REGISTRATION (VALID FOR 90 DAYS)

# EXHIBIT B



**auto claims HELP.net**

**PO Box 275**
**Bryn mawr PA 19010**
**610 524 1234-V 610 524 9023-F**
**info@AutoClaimsHelp.net**
### DRAFT

9-6-13

Matthew Weisberg
Weisberg Law, P.C.
7 S. Morton Ave.
Morton, PA 19070

Re: 2009 Dodge Journey #3D4GH57V19T559954, Aimee Candelet

Dear Mr. Weisberg,

On this day I inspected the above referenced vehicle at the
owner's residence in Camden Wyoming, DE. The focus of my
investigation was the determination of damage which pre-existed
Ms. Candelet's purchase and the effects of that damage on the
value of the vehicle. The vehicle was not running on the day of
my inspection, therefore I was unable to test drive the car.



*The subject vehicle is shown in the above photo. It is a 2009 Dodge
Journey AWD. The Kelley Blue Book current Private Party values for it
are: $11,713.00-excellent, $10,913.00-good and $9,713.00-fair
condition.*



*The paint film thickness of the right side body panels, hood and roof are shown in the above photo. One can easily see the inconsistency in the readings. Checking for paint film thickness is a standard and simple test performed by those in the automotive trade as a way of identifying and eliminating vehicles with a history of collision damage. The body panels with their factory finish intact measured uniformly between 4.22 and 5.50 mils.*



*The vehicle was subject to the Federal Anti-Theft Standard, which places the VIN on the body parts.*



*The FATS label is missing on the right rear door, a sign that it was replaced. FATS labels are not available once a car leaves the factory.*



*The right rear door has been replaced. One can see the tool marks on the nuts attaching the lower hinge on the door. This condition would have been obvious to anyone in the auto trade.*

| | | | | |
|---|---|---|---|---|
| | Total Repair (Customer ).................... | | | 2.00 |
| (2) CUSTOMER STATES TRANSMISSION IS HAVING PROB SHIFTING GEARS HAPPENS INT TRANS SEEMS TO BE SLIPPING TRANS HAS VERY HARD SHIFTS AND DOUBLE SHIFTS CHECKED AND FOUND FLUID IS VERY DARK CHECKED FOR CODES THERE ARE NONE THERE IS A NOISE ON DECELERATION THERE ARE INTERNAL ISSUES IN THE TRANSMISISON NEED TO TEAR DOWN TO FURTHER INSPECT MINIMUM TO TEAR DOWN INSPECT TRANSMYSISON $1176.00 PLUS WHAT EVER NEEDED TO REBUILD AND ADDITIONAL LABOR TO REPLACE WITH REBUILT TRANS $6294.00 (Tech:91) A | Labor Total Labor ..................... | [91] 10 | 23.00 23.00 | 98.00 98.00 |
| | Total Repair (Customer ).................... | | | 98.00 |
| (3) CHANGE ENGINE OIL AND FILTER, CHECK ALL FLUID LEVELS AND ADJUST TIRE PRESSURES COMPLETED OIL SERVICE | LOF5 | [91] 5 | 11.50 | 14.01 |

*The above image was captured from the repair order dated 4-15-13 from Holden Dodge for the transmission service.*



*Captured from the printout of the wheel alignment dated 5-21-13 by Capitol Tire and Auto Service the right rear axle shows a reading which is out of spec (-1.2 degrees)in the before status of the wheel alignment. The original sheet I saw at Ms. Candelet's home showed red (as opposed to green) shading surrounding the spec, which is how some alignment systems show problems with wheel alignment.*

• One or more values are
right rear camber is not adjustable

*Also on the alignment done on the previous image is a note on the page which says, "right rear camber in not adjustable." This is something which causes the vehicle to be unsafe.*

**Findings and Conclusion**

The vehicle had been damaged in a collision prior to Ms. Candelet's purchase. It is my understanding that there were no post-sale collisions and that the condition the vehicle was in at the time of my inspection was how it was sold to Ms. Candelet. This is a pertinent fact which directly affects the vehicle's condition marketability and value. People in the market for used vehicles are very concerned about prior collision damage.

The wheel alignment printout shown to me by Ms. Candelet (a scan of the faxed copy shown) indicated the right rear axle was out of spec, presumably due to the impact of the collision damage to the right quarter panel. Proper wheel alignment is critical to the safe operation of a vehicle and any deviation could cause erratic handling, particularly under panic conditions, such as an emergency braking to avoid a road hazard or collision. Any deviation from spec on a wheel alignment would be considered an unsafe condition.

This consumer preference is evidenced by the growth in the online consumer databases such as CarFax and Experian AutoCheck, which are accessed by consumers to check vehicle histories on used cars. These databases give particular emphasis to collision and

structural damage of a vehicle, but are notoriously incomplete and cannot be relied upon to exclude accidents or a claims history which would deter retail sales.

A used car inspection by a competent dealer should always determine aspects of a vehicle which are indicative of odometer tampering, prior use, prior owner abuse, collision damage and other effects which will determine the fitness of a vehicle to be sold, certified and/or guaranteed by a used car dealer. Such an inspection would provide a critical examination of the following conditions:

1. A vehicle's paint condition which included an examination of one's paint film thickness  (A scan with a digital paint film thickness gauge) which is indicative of collision repair and/or vehicle reconditioning.
2. Check a vehicle's paint for dirt in paint and other defects commonly found in refinishing, such as runs, drips, checking
3. Irregular body panel alignments, gaps, etc.

4. Non-OEM welds, such as MIG welds and aftermarket compression spot welds
5. Signs of usage inconsistent with the odometer mileage displayed such as brake pedal wear, interior deterioration, tears, rips, etc., worn suspension components
6. A thorough undercar inspection on a lift in which a qualified technician notes the condition of the suspension bushings, ball joints, CV joints and boots.
7. Evidence of frame and/or structural damage and repairs including welds, kinks, heat marks, fire damage, etc.
8. Evidence of flood and water damage including damage to interior components, upholstery, unusual corrosion of interior components
9. A vehicle history report such as CarFax or AutoCheck that detail the number of owners, mileage documents, fleet usage, daily rental use and collision events
10.   Excessive hinge wear such as bushing wear, misaligned and dropped doors which would indicate usage inconsistent with the mileage indicated
11. Excessive pedal wear (brake pedal in particular)
12. Installation and presence of non-OEM body panels and parts such as fenders, hoods, doors, bumper covers, reinforcements, cooling and A/C, suspension components.
13. Evidence of frame and/or structural repairs such as clamp marks on rocker panel pinch welds, elongation of reference holes in the body, chain attachment points
14. Uneven tire wear or wear patterns inconsistent with a properly aligned vehicle
15. Evidence of full body sectioning, aka clipping
16. Owner abuse such as excessive off-road use
17. Indications of excessive wheel travel (bottoming out)

18. Evidence of abrasion, excessive paint chipping or those consistent with hard use
19. Evidence of installation of non-metallic replacement painted bumper covers
20. Refinishing and/or repairs to non-metallic bumper covers
21. Indications of refinishing such as overspray, substandard practices such as failure to R&I body parts and/or improper preparation procedures
22. Checking of OBD II (onboard diagnostic) for airbag deployment history or other DTCs (diagnostic trouble codes).

A cursory inspection by anyone experienced in the automotive trade would have revealed evidence of prior collision damage. The selling dealer either knew, or *should have known* the subject vehicle was substantially damaged in a collision,

The subject vehicle showed signs of having refinish work performed, based some high film thickness readings I observed at my inspection. Disclosure of the refinishing of more than two panels is required at Manheim Auto Auctions, the main outlet for vehicle sales for new and used car dealers. Persons in the market for used vehicles, both private parties and dealers prefer the original coatings be intact and in good condition.

Refinished panels are not as desirable in the used car market, as they are indicators of collision repair. Furthermore, most OEM finishes are far more durable and free from failures and defects, which is the way refinish products have at times proven to be over the years. This is due to the many variables under which they are applied, i.e. environmental, equipment, personnel, training, and the technician's experience. Individuals in the automotive trade routinely scan vehicles with digital paint film thickness meters in an effort to detect those with collision repairs and to eliminate them from their purchase considerations.

Any mention of a history of collision damage---irrespective of the quality of repairs---would deter retail customers of a used car, or at the very least, decrease the amounts those persons would be willing to pay for such a car. In fact, PA law requires that disclosure is made regarding the structural/frame damage at the time of sale by a licensed retail auto dealer in the commonwealth.

A vehicle with collision repairs is inconsistent with the attributes of a first rate used car, as they have traditionally been shown to be prone to mechanical trouble, and on average their performance is less than that of an undamaged car. Furthermore, in the event of a subsequent collision, the car will tend to collapse more readily than an undamaged identical model. The molecular structure of steel used in auto body construction is known for its "memory," a term used in the repair industry to describe the tendency of straightened steel to revert to its

damaged state and dimensions when it is in a subsequent collision.

The fact refinish coatings were applied to vehicle adds considerable weight to the argument that the value is diminished. This occurs because the aftermarket coatings applied in a body shop are entirely unlike the factory finish in terms of their application method and chemical composition. It is for this reason that the refinished parts of the Audi body will age at different rates than those with their factory finish intact.

Most OEM finishes are far more durable and free from failures and defects, which is the way refinish products have at times proven to be over the years. Individuals in the automotive trade routinely scan vehicles with digital paint film thickness meters in an effort to detect those with collision repairs and to eliminate them from their purchase considerations.

With respect to the methodology used to arrive at this diminished valuation figure, I consulted a standard treatise used in the auto industry, the Kelley Blue Book (KBB). The KBB system offers conditions from to choose from, which gave me a range of current values, i.e. $11,713.00-excellent, $10,913.00-good and $9,713.00-fair condition. I employed the identical methodology used for diminished value appraisals I have done for the last 17 years which were performed for insurance companies, new car dealers, consumers, and attorneys, the vast majority of which have been accepted.

KBB, however, does not list a value for a vehicle in poor condition and indicates an independent appraisal is required. Based on the foregoing facts and conditions I therefore deem the vehicle to be in *poor* condition and appraise it at approximately $6,500.00.

I make the foregoing statements within a reasonable degree of automotive technical certainty and reserve the right to supplement this report as new information becomes available.

Yours truly,

Charlie Barone, ASE
PA Appraisers License #150444