## Table of Contents

| | | | Page |
|---|---|---|---|
| I. | INTRODUCTION | ............................................................ | 1 |
| II. | FACTUAL ALLEGATIONS | ............................................... | 3 |
| III. | ARGUMENT | ...................................................................... | 4 |
| | A. | STANDARD OF REVIEW FOR A MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6) ................................................................................ | 4 |
| | B. | PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AGAINST SCUSA............................................................................... | 5 |
| | C. | PLAINTIFF'S UTPCPL CLAIM FAILS AS A MATTER OF LAW. ............... | 5 |
| | D. | PLAINTIFF'S MMA CLAIM AGAINST SCUSA FAILS AS A MATTER OF LAW. ........ | 8 |
| | E. | PLAINTIFF'S CLAIM FOR VIOLATION OF TILA FAILS AS TO SCUSA. ................ | 9 |
| | F. | PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF UNDER ECOA. ............................................................................ | 12 |
| | G. | PLAINTIFF FAILS TO PLEAD FACTS SHOWING THAT SCUSA VIOLATED THE MVSFA........................................................................................ | 14 |
| IV. | CONCLUSION | ................................................................. | 14 |

# TABLE OF AUTHORITIES

## CASES

Aircraft Guar. Corp. v. Strato–Lift, Inc.,
  103 F.Supp.2d 830 (E.D.Pa. 2000) .......................................................................7

Ashcroft v. Iqbal,
  --- U.S. ----, 129 S.Ct. 1937 (2009) ............................................................ 4-5, 14

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)........................................................................................ 4-5, 14

California Pub. Employees'. Ret. Sys. v. Chubb Corp.,
  394 F.3d 126 (3d Cir. 2004)..................................................................................15

Dayhoff, Inc. v. H.J. Heinz Co.,
  86 F.3d 1287 (3d Cir. 1996).....................................................................................7

Germantown Sav. Bank v. Talacki,
  441 Pa.Super. 513, 657 A.2d 1285 (Pa.Super.Ct. 1995)........................................7

Gilmour v. Bohmueller,
  No. Civ.A. 04-2535, 2005 WL 241181 (E.D.Pa. Jan. 27, 2005) ...........................6

Heller v. Shaw Indus.,
  Civ. A. No. 95–7657, 1997 WL 535163 (E.D.Pa. Aug.18, 1997)...........................6

In Re Washington,
  Civ.A.No. 06-CV-1625, 2007 WL 846658 (E.D. Pa. March 19, 2007) .................11

Jordan v. Chrysler Credit Corp.,
  73 F.Supp.2d 469 (D.N.J. 1999) ...........................................................................11

Kane v. Equity One, Inc.,
  Civ. A. No. 03-3931, 2003 WL 22939377 (E.D. Pa. Nov. 21, 2003)....................12

Kelley v. Mortgage Elec. Registration Sys., Inc.,
  642 F. Supp. 2d 1048 (N.D. Cal. 2009) ................................................................11

McMaster v. CIT Group,
  Civ. A. No. 04-339, 2006 WL 1314379 (E.D. Pa. May 11, 2006) ........................11

McNinch v. Mortgage America, Inc.,
  250 B.R. 848 (Bankr. W.D.Pa. 2000) ...................................................................12

Morse v. Lower Merion Sch. Dist.,
  132 F.3d 902 (3d Cir. 1997)....................................................................................4

Peerless Wall and Window Coverings, Inc. v. Synchronics, Inc.,
    85 F. Supp. 2d 519 (W.D.Pa. 2000) ...................................................................7

Seldon v. Home Loan Servs., Inc.,
    647 F. Supp. 2d 451 (E.D. Pa. 2009) ....................................................... 10-11

Soslau v. PHH Mortg. Corp.,
    Civ. A. No. 06-1422, 2008 WL 2805606 (E.D.Pa. July 18, 2008) .................... 13-14

Xenos v. Corvino
    473 Fed. Appx. 169, 2012 WL 1096089 (3d. Cir. 2012) ...........................................4

**STATUTES**

73 P.S. § 201-9.2(a) ...........................................................................................7

73 Pa. Stat. Ann. § 201–3 ...................................................................................5

Pennsylvania Motor Vehicle Sales Finance Act, 61 P.S. § 601 et seq. ("MVSFA") ...... 2, 5, 14-15

**RULES**

12 C.F.R. § 202.2(c)(1) .....................................................................................13

Fed. R. Civ. P. 12(b)(6)...................................................................................1, 4

Fed. R. Civ. P. 9(b) ...........................................................................................6

**CODES**

15 U.S.C. § 1601 ..............................................................................................10

15 U.S.C. § 1640(a) ............................................................................................9

15 U.S.C. § 1641(a) ...................................................................................... 10-11

15 U.S.C. § 1691(d)(2) .....................................................................................13

15 U.S.C. § 2301(6) ............................................................................................9

15 U.S.C. § 2310(d) ............................................................................................8

Equal Credit Opportunity Act, 15 U.S.C. § 1694(e) et seq. ("ECOA") ........................2

Magnusson-Moss Warranty Improvement Act, 15 U.S.C. § 2301 et seq. ("MMA") ....... 2, 8-9, 15

Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA") .............................................2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMY CANDELET, | : |
| | : |
| Plaintiff, | : |
| | : |
| | :     Civil Action No.  2:14-cv-01442-AB |
| v. | : |
| | : |
| MIKE ROTH D/B/A AUTO PROS; | : |
| SANTANDER CONSUMER USA, INC.; JOHN | : |
| DOES 1-10, | : |
| | : |
| Defendants. | : |

MEMORANDUM OF LAW
IN SUPPORT OF MOTION OF DEFENDANT,
SANTANDER CONSUMER USA, INC., TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant, Santander Consumer USA, Inc. ("SCUSA"), by and through its

attorneys, Stradley Ronon Stevens & Young, LLP, submits this brief in support of its Motion to

Dismiss the claims asserted against it in the Complaint filed by Plaintiff, Aimee Candelet,

pursuant to Fed. R. Civ. P. 12(b)(6).

I.        INTRODUCTION

Plaintiff purchased a used 2009 Dodge Journey (the "Vehicle") in May 2012, but

now has buyer's remorse.  She asserts a variety of claims against Defendants Mike Roth d/b/a

Auto Pros ("Auto Pros") and SCUSA, essentially claiming that the "defendants" – without

saying who did what – engaged in fraudulent and other wrongful in selling the Vehicle.  Plaintiff

contends that Auto Pros denied Plaintiff's original credit application to buy the Vehicle for

$12,000, and then increased the purchase price by $3,000, to account for a purported "bank fee."

The allegations of the Complaint, however, make clear that Plaintiff agreed to the purchase price

- 1 -

in the operative contract, which Plaintiff signed.  In other words, Plaintiff agreed to the purchase price and signed her name to a contract to that effect.  She cannot now claim that the price should have been something else.

       Plaintiff also contends that Auto Pros concealed certain defects with the Vehicle, and then later refused to make necessary repairs, claiming that the Vehicle was not under warranty, despite Plaintiff's belief to the contrary.  There is no evidence of any warranty attached to the Complaint, including anything to identify the nature of the coverage, or any exclusions, or any other materials terms.  Based on these allegations, Plaintiff claims that Auto Pros and SCUSA violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa.C.S.A. § 201-1 et seq. ("UTPCPL"), the Magnusson-Moss Warranty Improvement Act, 15 U.S.C. § 2301 et seq. ("MMA"), the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"), the Equal Credit Opportunity Act, 15 U.S.C. § 1694(e) et seq. ("ECOA"), and the Pennsylvania Motor Vehicle Sales Finance Act, 61 P.S. § 601 et seq. ("MVSFA").

       Plaintiff's Complaint fails as a matter of law.  First, there is no basis for any liability attributable to SCUSA set forth in the Complaint.  In fact, the only allegations relating to SCUSA are Plaintiff's conclusory statements that "[SCUSA] is a Texas corporation maintaining a principle place of business at the above captioned address" and that "Plaintiff then called Defendant, [SCUSA], the loan's assignee, to inquire about the fee."  (Compl. ¶¶ 5 and 10, respectively.)  Plaintiff does not plead a single wrongful act on the part of SCUSA with respect to her claims.  Nor does Plaintiff even identify which defendant engaged in what specific conduct.  Plaintiff's Complaint cannot be allowed to survive based on such non-specific, vague and conclusory allegations.

- 2 -

Auto Pros also filed its own Motion to Dismiss [Dckt. 11] on May 5, 2014, and SCUSA joins in Auto Pros' motion.  Further, for the reasons explained below, each of Plaintiff's claims against SCUSA fail independently as a matter of law.  Consequently, the Court should dismiss Plaintiff's claims asserted against SCUSA for failure to state a claim upon which relief could be granted.

## II.   <u>FACTUAL ALLEGATIONS</u>

The background facts are fully detailed in the Motion to Dismiss filed by Auto Pros.  In short, the Complaint alleges that Plaintiff sought to purchase the Vehicle from Auto Pros for $12,000, but that Auto Pros denied Plaintiff for financing, and then subsequently approved her after increasing the purchase price of the Vehicle by $3,000, to account for a purported "bank fee."  (Compl. ¶¶ 7-9.)  The Complaint further alleges that Plaintiff noticed several "problems" with the Vehicle on the day of purchase.  (Compl. ¶ 11.)  Specifically, Plaintiff claims that the bumper of the Vehicle was partially detached and that the floor compartments inside the Vehicle did not close completely.  (Id.)  Plaintiff also contends that, after purchasing the Vehicle, she noticed the Vehicle made a "noise" when turning, which prompted her to have the car serviced by Auto Pros.  (Id. at ¶ 12.)  Plaintiff claims that Auto Pros fixed the bumper but did not address the turning "noise" or the floor compartments.  (Id.)

According to the Complaint, Plaintiff brought the Vehicle back to Auto Pros for service approximately two months after purchasing the Vehicle (July 2012) due to alleged problems with the engine overheating.  (Id. ¶ 13.)  Plaintiff claims she was told by Auto Pros that the Vehicle was not defective, nor did it require further repairs.  (Id.)  In January 2013 – nearly eight months after Plaintiff purchased the Vehicle – Plaintiff claims that the Vehicle would not operate at all, and that she was told by another dealer that the Vehicle needed a new

- 3 -

transmission.  (Id. at ¶¶ 14-15.)  Plaintiff further claims that the dealer told her the Vehicle was not under warranty.  (Id. at ¶ 15.)  Despite this, Plaintiff alleges that she continues to make payments on the Vehicle while it remains parked at her home.  (Id. at ¶ 16.)

Based upon these alleged facts, Plaintiff claims that Auto Pros concealed the Vehicle's "defects" at the time of purchase, and that Plaintiff was deceived about the funding of her Retail Installment Contract ("RISC").  (Id. at ¶¶ 17-18.)  Nowhere does Plaintiff allege any specific wrongful conduct on the part of SCUSA.

## III.   ARGUMENT

### A.   Standard of Review for a Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) serves to test the adequacy of a complaint, which must "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).  In other words, a complaint must "state a claim to relief that is plausible on its face." Id. at 570.  When assessing whether the complaint satisfies this standard, courts must treat a complaint's allegations as true. Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009).  Courts, however, need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 1949; see also Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) (noting that courts "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss") (citations and internal quotations omitted).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 129 S.Ct. at 1950.  While Iqbal and Twombly are applicable to complaints filed *pro se* by non-lawyers, these complaints should be "liberally construed and held to less stringent standards than formal pleadings drafted by lawyers." Xenos v. Corvino 473 Fed. Appx. 169, 171, 2012 WL 1096089, *2 (3d. Cir. 2012).

- 4 -

**B.**   **Plaintiff's Complaint Fails to State a Claim for Relief Against SCUSA.**

Although Plaintiff's Complaint names SCUSA as a defendant, there is not a single fact pleaded in the Complaint to support any claim against SCUSA.  The only allegations relating to SCUSA are Plaintiff's conclusory statements that "[SCUSA] is a Texas corporation maintaining a principle place of business at the above captioned address" and that "Plaintiff then called Defendant, [SCUSA], the loan's assignee, to inquire about the fee."  (Compl. ¶¶ 5 and 10, respectively.)  Neither of these allegations demonstrate any misconduct on the part of SCUSA, nor do they form the basis for a cause of action arising under the UTPCPL, MMA, TILA, ECOA, or the MVSFA.

Under these circumstances, Plaintiff's Complaint falls woefully short of the required pleading standards to state a claim against SCUSA.  See Iqbal, 129 S.Ct. at 1949; Twombly, 550 U.S. at 555.  The Court should dismiss the Complaint against SCUSA for this reason alone.

**C.**   **Plaintiff's UTPCPL Claim Fails as a Matter of Law.**

In Count I, Plaintiff purports to assert a claim against Defendants under the UTPCPL for what she claims to be "unfair or deceptive practices."  (Compl. ¶ 22.)  Plaintiff essentially contends that she signed the RISC based on purported misrepresentations made by Auto Pros, without any mention of SCUSA whatsoever.  (Compl. ¶ 8.)  However, Plaintiff fails to plead her UTPCPL claim with the requisite specificity, and her vague and conclusory allegations of fraud are insufficient to state a claim.

The UTPCPL prohibits any person from engaging in "[u]nfair methods of competition and unfair or deceptive acts or practices." 73 Pa. Stat. Ann. § 201–3.  To establish a valid cause of action under the UTPCPL for unfair or deceptive acts or practices, a plaintiff must

- 5 -

plead those acts or practices with the same specificity as common law fraud. <u>Gilmour v.</u>
<u>Bohmueller</u>, No. Civ.A. 04-2535, 2005 WL 241181 (E.D.Pa. Jan. 27, 2005) (citing <u>Grant v.</u>
<u>Kingswood Apts.</u>, No. Civ. A. 01–1523, 2001 WL 1876343, at *3 (E.D.Pa. Oct 15, 2001).
Accordingly, in order to assert a cause of action pursuant to the UTPCPL, a plaintiff must allege
the following essential elements of fraud: "(1) material misrepresentation of a material fact; (2)
scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party
defrauded upon the misrepresentation; and (5) damages to the party defrauded as a proximate
result." <u>Heller v. Shaw Indus.</u>, Civ. A. No. 95–7657, 1997 WL 535163, at *20 (E.D.Pa. Aug.18,
1997) (citing <u>Prime Meats, Inc. v. Yochim</u>, 422 Pa.Super. 460, 619 A.2d 769, 773
(Pa.Super.Ct.1993)).  Further, Federal Rule of Civil Procedure 9(b)  mandates that "[in] all
averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated
with particularity." Fed.R.Civ.P. 9(b).

  Here, Plaintiff's Complaint fails to satisfy the required elements to state a
UTPCPL claim.  First, she does not allege any specific, actionable conduct on the part of
SCUSA.  Rather, Plaintiff claims that the misrepresentations were made by Auto Pros.  (Compl.
¶¶ 8-9.)  Plaintiff's UTPCPL claim against SCUSA fails for this reason alone.

  Even if the claimed misrepresentations could be attributable to SCUSA,
Plaintiff's UTPCPL claim would still fail.  Plaintiff avers, without any factual support, that Auto
Pros (1) misrepresented the purchase price of the Vehicle by including a purportedly unlawful
$3,000 "bank fee", and (2) misrepresented that the Vehicle came with a 2-year warranty.
(Compl. ¶¶ 8-9.)  Taking these in order, nowhere does Plaintiff state the exact purchase price of
the Vehicle as she believed it to be, nor does she identify why she believed the purported fee to
be unlawful.  To the contrary, the very terms of the contracts which Plaintiff attached to her

- 6 -

Complaint identified the sales price as $15,655.00.[1]  Plaintiff signed her name to those

documents to express her agreement to those terms, including the price.  She cannot now claim

she agreed to some other amount.[2]  Further, as Auto Pros notes, the Retail Purchase Agreement

is a fully integrated document.  [Dckt. 11 at pp. 5-7.]  Therefore, any attempt to prove that the

price was anything other than as set forth in the Retail Purchase Agreement is barred by the parol

evidence rule.  See, e.g, Dayhoff, Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1300 (3d Cir. 1996)

(rejecting fraud in the inducement of a contract as an exception to the parol evidence rule);

Peerless Wall and Window Coverings, Inc. v. Synchronics, Inc., 85 F. Supp. 2d 519, 531

(W.D.Pa. 2000) (holding that parol representations that contradict a fully integrated agreement

are not admissible).

    With respect to Plaintiff's allegation of misrepresentations concerning a purported

warranty, conspicuously absent from the Complaint are the terms of the alleged warranty that

Plaintiff believed came with the Vehicle – including the type of warranty, items covered, and any

specific limitations.  In fact, no warranty is identified in any of the Contract documents, belying

Plaintiff's contention that there was one.

    Plaintiff simply pleads no facts to support her claim that Defendants

misrepresented anything to her.  Because Plaintiff fails to identify even a single representation

made by SCUSA, let alone a misrepresentation, Plaintiff cannot claim that she detrimentally

relied on any misrepresentations, or that she suffered damages as a result.  See 73 P.S. § 201-

---

[1] The copies of the Retail Purchase Agreement and the Retail Installment Sale Contract attached to the Complaint are admitted difficult to read.  More legible copies are attached hereto as Exhibits A and B, respectively, for the Court's convenience.

[2] Under Pennsylvania law, an enforceable contract exists "when parties reach a mutual agreement, exchange consideration and have set forth the terms of their bargain with sufficient definiteness to be specifically enforced." Aircraft Guar. Corp. v. Strato–Lift, Inc., 103 F.Supp.2d 830, 836 (E.D.Pa. 2000) (citing USA Machinery Corp. v. CSC, Ltd., 184 F.3d 257, 263 (3d Cir.1999).  Further, "[A] party's signature to a contract is designed to evidence his or her intention to be bound thereby."  Germantown Sav. Bank v. Talacki, 441 Pa.Super. 513, 657 A.2d 1285, 1289 (Pa.Super.Ct. 1995) (citing Petrie v. Haddock, 384 Pa. 7, 119 A.2d 45, 47 (1956)).

9.2(a) (providing a private right of action under UTPCPL only to a person who suffers "ascertainable loss of money or property, real or personal").  As such, Plaintiff's UTPCPL claim against SCUSA fails as a matter of law, and must be dismissed with prejudice.

Finally, to the extent that Plaintiff contends that Auto Pros concealed defects with the Vehicle, the Complaint fails to allege that Auto Pros was even aware of the purported defects prior to the sale of the Vehicle.  (See, generally, Compl.)  Rather, Plaintiff merely relies on a letter attached to the Complaint and drafted by an entity known as "AutoClaims Help," which is dated September 16, 2013 – nearly a year and a half after Plaintiff purchased the Vehicle.  (See Exhibit B to Plaintiff's Compl.)  The letter, however, is conclusory hearsay at best, and fails to suggest that Auto Pros knew of the alleged defects, let alone that the defects existed at the time Plaintiff purchased the Vehicle.  In sum, nothing in the Complaint suggests that Auto Pros had any knowledge of the purported defects before the sale of the Vehicle, and Plaintiff's contention that "defendants" are now liable for mechanical issues discovered months after the Vehicle was purchased is meritless.

Accordingly, Plaintiff's UTPCPL claim should be dismissed with prejudice.

**D.  <u>Plaintiff's MMA Claim Against SCUSA Fails as a Matter of Law.</u>**

In Count II, Plaintiff alleges that Defendants violated the Magnusson-Moss Warranty Improvement Act, 15 U.S.C. § 2301, et seq. ("MMA"), by failing to comply with an express warranty that purportedly came with the Vehicle.  (Compl. ¶¶ 32-33.)  Plaintiff's MMA claim is legally insufficient and  must be dismissed with prejudice.

The MMA generally sets forth various written warranty guidelines, procedures, and requirements, and provides a cause of action to consumers harmed by a warrantor's failure to comply with the act. 15 U.S.C. § 2310(d).  Under the MMA, a written warranty is defined as:

- 8 -

"any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the bargain between a supplier and a buyer for purposes other than resale of such product." 15 U.S.C. § 2301(6).

  Here, Plaintiff's Complaint fails to allege any facts to support a claim against SCUSA under the MMA.  First, Plaintiff has failed to attach a copy of the purported warranty to the Complaint, highly suggesting that none exists.  Second, even if a written warranty did exist, there is not a single fact alleged that describes the scope or nature of the warranty with any degree of particularity, such as the effective dates of the warranty, items covered, coverage exceptions, liability, and any other conditions that may limit or define warranty coverage. Plaintiff's Complaint also fails to describe how SCUSA is liable under the MMA.  Instead, all that Plaintiff alleges is that "Defendants" failed to "comply with express warranties and their obligations under the MMA," without any further factual support.  (Compl. ¶ 33.)  For all these reasons, Plaintiff's Complaint fails to state a claim for relief against SCUSA under the MMA, and Count II of the Complaint should be dismissed with prejudice.

  **E.**  **Plaintiff's Claim for Violation of TILA Fails as to SCUSA.**

  In Count III, Plaintiff contends that Defendants violated TILA by "rushing" Plaintiff through the loan closing process, and failing to disclose the purported $3,000 "bank fee." (Compl. ¶¶ 8-10, 42.)  Count III fails to state a claim upon which relief can be granted and should be dismissed with prejudice.

  TILA allows a person to assert a private right of action against a creditor if the creditor violated certain provisions of the statute.  See 15 U.S.C. § 1640(a).  TILA is a disclosure

- 9 -

statute—it requires a creditor to provide a borrower with certain information at the outset of a transaction to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." See 15 U.S.C. § 1601.  Under TILA, an assignee is only be liable for TILA violations by the assignor if the violations are apparent on the face of the financing documents.  See 15 U.S.C. § 1641(a).

Here, Plaintiff has not alleged any facts to support a TILA violation by SCUSA. First, Plaintiff does not identify any actual disclosures that Defendants allegedly failed to provide, nor does she explain how the disclosures provided were in any way inaccurate or otherwise improper.  Nowhere in Plaintiff's Complaint does she allege that she was charged any amount different from what was listed in the Annual Percentage Rate, Finance Charge, or Amount Financed sections of her Retail Installment Sales Contract.  Therefore, she has not identified any error in those disclosures.  Further, the RISC plainly lists the purchase price of the Vehicle as $15,655, as well as all other applicable charges[3], which the Plaintiff agreed to pay, as evidenced by her signature on the RISC.  (See Exhibit A attached to Compl.)  Plaintiff's contention that the TILA disclosures were somehow defective or improper is nothing more than an unsupported conclusion of law.

Courts have held that borrowers are required to set forth the nature of the claimed TILA violation – including the allegedly insufficient or incorrect disclosures – to state a claim under the act.  In Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 461-62 (E.D. Pa. 2009), the Court addressed a TILA claim premised on the allegation that the defendants failed to "clearly and accurately" disclose a finance charge for the plaintiffs' loan.  Id. at 462.  The Court

---

[3]     The Retail Installment Sales Contract does not reference the purported $3,000 "bank fee."   The reason is simple – Plaintiff was not charged a $3,000 "bank fee."   Rather, that amount was merely part of the negotiated purchase price for the Vehicle, which is identified in the "cash price" box on the Retail Installment Sales Contract.

- 10 -

noted that the complaint was devoid of any factual allegations regarding how defendants failed to properly disclose the finance charge and that the complaint contained no allegations as to how the disclosed fees differed from those charged to plaintiffs. Id. at 461-62. The Court concluded: "Because the complaint contains insufficient allegations of an undisclosed or under-disclosed finance charge or related fees, plaintiffs have failed to state a claim upon which the court can grant relief under TILA on this basis." Id. at 461. See also Kelley v. Mortgage Elec. Registration Sys., Inc., 642 F. Supp. 2d 1048, 1059 (N.D. Cal. 2009) (dismissing TILA claim where plaintiffs failed to "explain exactly what information defendants failed to provide").

Here, although the specific allegations are somewhat different, the underlying theme is similar to Seldon, and the same reasoning should apply. Plaintiff purports to assert a claim under TILA, but fails to state any factual allegations to state a claim. Plaintiff's TILA claim is nothing more than a bald assertion that Defendants failed to make proper disclosures under TILA, without basic information regarding what disclosures were made (or omitted) and how they were inaccurate or otherwise improper.

Further, to the extent Plaintiff seeks to impute TILA assignee liability to SCUSA, Plaintiff's claim still fails. As assignee is only liable for a TILA violation if the violation is apparent on the face of the financing documents. See 15 U.S.C. § 1641(a). See also, In Re Washington, Civ.A.No. 06-CV-1625, 2007 WL 846658 (E.D. Pa. March 19, 2007) (holding that an assignee can only be liable when the purported TILA violation is apparent on the face of the document); Jordan v. Chrysler Credit Corp., 73 F.Supp.2d 469 (D.N.J. 1999) (holding assignee financial institutions have no duty to inquire or refer to evidence or documents extraneous to the disclosure documents in cases where the alleged violation is not apparent on the face of the disclosure documents assigned); see also, McMaster v. CIT Group, Civ. A. No. 04-339, 2006

- 11 -

WL 1314379 (E.D. Pa. May 11, 2006) (allegation that assignee bank could have been on notice of TILA violations because disbursement of money to lawyer not in accord with any disclosure to plaintiff in loan file not strong enough to impose TILA assignee liability on assignee bank as there were no apparent errors on the face of loan documents); <u>McNinch v. Mortgage America, Inc.</u>, 250 B.R. 848, 860-861 (Bankr. W.D.Pa. 2000) (assignee's duty simply to ensure that the loan had a matching accurate TILA statement paired with it, and nothing more); <u>Kane v. Equity One, Inc.</u>, Civ. A. No. 03-3931, 2003 WL 22939377 (E.D. Pa. Nov. 21, 2003) (rejecting plaintiff's allegations that, through inspection of loan documents, assignee did or should have noticed that gas bill was improperly charged twice on grounds that assignee had no duty of additional inquiry and such violation was not apparent on face of the assigned loan documents).

Here, Plaintiff's Complaint fails to identify any purported TILA violations, let alone violations that were apparent on the face of the financing documents. In particular, even if there was some improper $3,000 "bank fee" – which is denied – it is not listed in the Retail Installment Sales Contract. Therefore, this alleged "bank fee" would not be apparent from the face of the financing documents. Consequently, SCUSA cannot be held liable for any such charge. Plaintiff's TILA claim fails as a matter of law, and must be dismissed with prejudice.

**F.**     **<u>Plaintiff's Complaint Fails to State a Claim for Relief Under ECOA.</u>**

In Count IV of the Complaint, Plaintiff alleges that Defendants violated ECOA by purportedly failing to notify Plaintiff of an adverse credit decision. (Compl. At ¶ 51-52.) Like Plaintiff's other claims, her ECOA claim fails to identify any particular conduct of SCUSA that allegedly violated that act. Count IV should be dismissed as to SCUSA for that reason alone.

Even if the Court were to consider the merits of Count IV, it still fails as a matter of law. ECOA requires that "within 30 days. . .after receipt of a completed application for credit,

a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(2).  A creditor satisfies this obligation by (A) providing statements of reasons in writing ... or (B) giving written notification of adverse action ...." 15 U.S.C. § 1691(d)(2).  Regulation B further defines "adverse action" as: "(i) [a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application *unless the creditor makes a counteroffer*." 12 C.F.R. § 202.2(c)(1) (emphasis added)  A counteroffer is an offer to extend credit in a different amount, or on other terms than the term requested.  Id.

Thus, as explained by Auto Pros in its own Motion to Dismiss, ECOA contemplates that a creditor can take the following actions in response to an application for credit: 1) approve the application; 2) extend a counteroffer; or 3) notify of "adverse action."  See 15 U.S.C. § 1691(d)(2); 12 C.F.R. § 202.2(c)(1).  This Court has further held that "[a] counteroffer made within the thirty days is not an adverse action requiring an additional written notice."  Soslau v. PHH Mortg. Corp., Civ. A. No. 06-1422, 2008 WL 2805606 (E.D.Pa. July 18, 2008) (citing Ricciardi v. Ameriquest Mortgage Co., Civ. A. No. 03-2995, 2004 WL 739965, at *2 (E.D. Pa. Mar 15, 2004).

In Soslau, plaintiff-borrower alleged that defendant-lender violated ECOA by failing to notify her of the reasons why her initial credit application was denied.  In evaluating the plaintiff-borrower's ECOA claim, this Court held that written notice of an adverse credit decision was not required when the lender extended a counteroffer to the plaintiff-borrower within thirty days, and the counteroffer was accepted.

Here, even assuming Plaintiff's allegations to be true, her ECOA claim should be treated no differently than in Soslau.  According to Plaintiff's Complaint, Auto Pros denied her credit when the purchase price of the Vehicle was purportedly $12,000.  (Compl. ¶ 9.)  Under

- 13 -

ECOA, Plaintiff arguably would have been entitled to written notice explaining Auto Pros' adverse credit decision, except for the fact that Auto Pros extended a counteroffer by increasing the purchase price by $3,000.  After the purported price increase, Plaintiff signed the loan documents, and purchased the Vehicle, thereby accepting Auto Pros' counteroffer.  (Compl. ¶ 8.) Because Plaintiff accepted the counteroffer, she was no longer entitled to receive written notice of Auto Pros' initial credit denial, just as in <u>Soslau</u>.  As such, Plaintiff's ECOA claim fails as a matter of law, and should be dismissed with prejudice.

        **G.**        <u>**Plaintiff Fails to Plead Facts Showing that SCUSA Violated the MVSFA.**</u>

        In Count V, Plaintiff alleges that Defendants violated the Pennsylvania Motor Vehicle Sales Finance Act, 61 P.S. § 601, et seq. ("MVSFA"); however, the Complaint alleges nothing more.  To be clear, Plaintiff's MVSFA claim is nothing more than one sentence stating: " At all times material, Defendants were in violation of the MVSFA, 61 P.S. § 601, et seq., including the foregoing (incorporated by reference)." (Compl. ¶ 54.)  The Complaint fails to include any facts describing the circumstances of SCUSA's purported violation of the MVSFA, nor does it identify which provision of the MVSFA SCUSA allegedly violated, or the basis for Plaintiff's claimed relief.  The Complaint entirely fails to apprise SCUSA of the exact nature of Plaintiff's MVSFA claim, or any issues to be raised at trial.  As such, Plaintiff's MVSFA claim fails to meet the minimum pleading standards set forth in <u>Iqbal</u> and <u>Twombly</u>.

**IV.**        <u>**CONCLUSION**</u>

        Plaintiff's Complaint fails to state any cognizable claim against SCUSA. Nowhere in Plaintiff's Complaint does she plead any purported wrongdoing or misconduct on the part of SCUSA.  Further, each of Plaintiff's claims fail independently as a matter of law. Plaintiff's UTPCPL claim fails because it is not pleaded with the requisite specificity, nor does

she plead any facts to support a claim of fraud. Similarly, Plaintiff's MMA claim fails because she pleads no facts describing the purported warranty, or how SCUSA allegedly breached it. Plaintiff's TILA claim does not identify any actual disclosures that SCUSA allegedly failed to provide, nor does she explain how the disclosures provided were inaccurate or otherwise improper. Moreover, to the extent SCUSA could be held liable for a purported TILA violation, Plaintiff fails to identify any violations that were apparent on the face of the documents. Plaintiff ECOA claim fails because she was never entitled to receive written notice of the alleged adverse credit decision following the acceptance of a counteroffer in which she agreed to purchase the Vehicle. Finally, Plaintiff's MVSFA claim is nothing more than an unsupported conclusion of law.

For the foregoing reasons, SCUSA respectfully requests that the Court grant its motion, and dismiss Plaintiff's Complaint with Prejudice.[4]

Respectfully submitted,

s/ Thomas M. Brodowski
Eric M. Hurwitz, Esquire
Thomas M. Brodowski, Esquire
STRADLEY RONON STEVENS & YOUNG, LLP
2600 One Commerce Square
Philadelphia, PA  19103-7098
(215) 564-8000

*Attorneys for Defendant,*
*Santander Consumer USA, Inc.*

Dated:  May 9, 2014

---

[4]     A dismissal with prejudice is appropriate because any amendments to the Complaint would be futile. See California Pub. Employees'. Ret. Sys. v. Chubb Corp., 394 F.3d 126, 166, n. 28 (3d Cir. 2004) (district court properly dismissed claims with prejudice where the district court found that further amendment would be futile).

- 15 -